# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

MAY 11 2012

RUDY CHESTANG, III,   )
          )
   PLAINTIFF,   )
          )
  vs.       )
          )  CIVIL ACTION NO: *5:12CU69DPJ-FKB*
ALCORN STATE UNIVERSITY; )
ALCORN STATE UNIVERSITY )  **TRIAL BY JURY DEMAND**
BOARD OF TRUSTEES; AND )
DR. ALVIN SIMPSON,   )
IN HIS OFFICIAL CAPACITY, )
          )
   DEFENDANTS.  )

## COMPLAINT

Now Comes Plaintiff, **RUDY CHESTANG, III,** by his undersigned counsel, and files

his Complaint againstt defendants, **ALCORN STATE UNIVERSITY** referred to ("Alcorn") as

Defendant to this action; **ALCORN STATE UNIVERSITY BOARD OF TRUSTEES** referred

to ("Board") as Defendant to this action; and **DR. ALVIN SIMPSON** referred to ("Simpson") as

Defendant to this action, in his official capacity as a representative of Alcorn State University

(Collectively, the "Defendants") and states the following grounds:

1. This is a civil action for declatory judgment, injunctive, equitable relief,compensatory
   and punitive damages to redress unlawful discrimination on the basis of gender,
   retaliation and premeditated motivation to withhold Plaintiff's grade causing multiple
   injuries.

## JURISDICTION AND VENUE

2.  This action is brought pursuant to 28 U.S.C 1331, 28 U.S.C. 1343 and 42 U.S.C. 2000(e).

3.  Venue is proper in the Southern District of Mississippi, Western Division, because the events and omissions giving rise to the claim occurred in said district and division.

## PARTIES

4.  Plaintiff, Rudy Chestang, III was at all relevant times a citizen of the United States attending Alcorn State University and residing in Jackson, MS in pursuit of a bachelor's degree.

5.  Defendant, ALCORN STATE UNIVERSITY was and is an entity duly organized and existing under the laws of the state of Mississippi.  The Defendant may be served with the process of this Court through delivering a copy of the summons and complaint to the Attorney General of the State of Mississippi, Jim Hood, Walter Sillers Building, 550 High Street, Suite 1200, Jackson, MS 39201.  As an institution of higher learning, Alcorn receives federal funding through student financial aid and is therefore subjected to abide by Title IX concerning sexual harassment of students, which may implicate the adequacy of implementation of their sexual harassment policies and procedures.

6.  Defendant, ALCORN STATE UNIVERSITY BOARD OF TRUSTEES governs and operates Alcorn State University and is a recipient of federal funding pursuant to Title IX, of the Education Amendments of 1972, 20 U.S.C. 1681, et seq.  The Defendant may be served with the process of this Court through delivering a copy of the summons and complaint to the Attorney General of the State of Mississippi, Jim Hood, Walter Sillers Building, 550 High Street, Suite 1200, Jackson, MS 39201.

7.  Defendant, DR. ALVIN SIMPSON was and is a professor at Alcorn State University teaching Black Psychology and advisor to many students, including Chestang.  The Defendant is a resident of Mississippi.

## ALLEGATIONS RELATED TO ALL COUNTS

8. Title IX of the Education Amendment Act of 1972, as amended, 20 U.S.C. 1681, by the Civil Rights Act of 1991 provides for injunctive and other relief against gender discrimination, sexual harassment, and / or retaliation.

9. Pursuant to Title IX, Plaintiff Chestang intends to demonstrate the existence of a hostile environment created by adverse actions on the part of the Defendants by showing: (1) Plaintiff is a heterosexual male and member of a protected class; (2) legitimate expectations of the University were met; (3) Chestang suffered and continues to suffer from the adverse actions causing emotional stress and illness; (4) harassment was based on sex discrimination; (5) harassment was so pervasive that it altered Chestang's academic performance and enrollment; and (6) others not in the class were treated more favorably.

10. This court has jurisdiction despite the perception of the expiration of statute of limitations since the statute was tolled for lack of service and through the pendency of the original action.

11. In Mississippi, upon the filing of legal proceedings, the statute of limitations is tolled up to 120 days to allow for time for service of process. After the defendant is served, the limitation period is tolled through the pendency of the action, but begins to run again if the case is dismissed.

12. The case was dismissed without prejudice and closed on December 12, 2011.

13. The case was dismissed due to defective service on one of the defendants, Alcorn State University. The statute of limitations as to Plaintiff's claims against Alcorn State University was tolled for 120 days upon the filing of the original complaint. This action against Alcorn State University, being filed within 120 days from the expiration of the original three-year statute of limitations, is timely.

14. Service was proper on the other defendants in the underlying action and, according to Mississippi law, the statute of limitations only began to run again as of the date of the dismissal.

15. This action against the remaining defendants, being filed within the three-year statute of limitation period, tolled through the pendency of the original action, is timely.

16. Further, Plaintiff's injuries are continuing and relating back to the original violation since Plaintiff has incurred new student loans and lost basketball eligibility.

17. Chestang was enrolled at Alcorn State University from Fall 2005 through Spring 2008 and intended on majoring in Communications while playing basketball.

18. Simpson was Chestang's professor and advisor.

19. Due to the Alcorn basketball schedule, Chestang would need to make up exams occasionally. Simpson would require Chestang to take all make up exams at his house.

20. Simpson would make personal calls to Chestang every week to discuss things unrelated to Alcorn, class, or matriculation.

21. Over the telephone and in person, Simpson repeatedly made inappropriate comments that made Chestang feel uncomfortable. In fact, Simpson indicated a direct correlation between their relationship and Chestang's grade in Simpson's class.

22. Simpson's actions were capricious and a gross abuse of power and intimidated Chestang to the extent that he was forced to transfer.

23. On a continuous and ongoing basis since Plaintiff was enrolled in Simpson's class, Simpson engaged in open, obvious, inappropriate and unwanted sexually harassing conduct towards Chestang.

24. Congress enacted Title IX to prevent the dissemination of federal funds to support discriminatory practices and to provide recourse for those in violation. Specifically, Title IX provides: "[N]o person in the United States shall on the basis of sex, be excluded from participation in, be denied the benefits of, or [] subjected to discrimination under any education program or activity accepting Federal Financial assistance" 20 U.S.C. 1681 (a).

25. The sexual harassment policy at Alcorn State University states:

> "No person shall engage in unwelcome sexual advances, requests for sexual favors and / or other physical conduct, and expressive behavior of a sexual nature where submission to such conduct is made explicitly, or implicitly, a term or condition of an individual's employment or education; or where submission to, or rejection of such conduct by an individual is used as a basis for academic or employment decisions affecting that individual. Instances where such conduct has the purpose of substantially interfering with an individual's academic and professional performance or creating an intimidating hostile, or demeaning employment or educational environment is strictly prohibited."

A true and correct copy of the Alcorn State Harassment Policy is attached hereto as Exhibit A.

26. On a continuous and ongoing basis, Simpson engaged in open, obvious, notorious, inappropriate, unwanted sexually harassing conduct toward male students on Alcorn's campus in violation of the aforementioned policy.

27. Courts have ruled that "public and private universities are mandated to uphold policy statements in handbooks and other printed material," affirmed in *Holert v. University of Chicago*, 51 F. Supp. 1294, 1301 (N.D., Il., 2000).

28. Chestang repeatedly refused Simpson's advances and unwanted conduct, but it continued.

29. On one occasion, Chestang was in Simpson's office upon Simpson's request to discuss miscellaneous topics and Simpson rubbed his body against Chestang's body in a sexual manner.

30. Chestang immediately rebuked Simpson's advances.

31. After Simpson's extreme and outrageous conduct, Chestang was understandably confused and upset. Chestang, who had looked up to Simpson as a teacher, role model and an authority figure for guidance and protection, now felt violated, betrayed and fearful of what Simpson might do.

32. Simpson is a widely respected Professor and Chestang felt that Simpson could adversely affect his matriculation and his position on the basketball team.

33. Simpson aggressively pursued relations with Chestang.

34. Chestang communicated Simpson's aggressive pursuit of sexual relations to another student, Anthony Searcy, who began to accompany Chestang to Simpson's house when Simpson would require Chestang to take make up tests at Simpson's home.

35. Upon seeing that Simpson's inappropriate and harassing behavior would not abate, Chestang began recording their phone conversations between him and Simpson.

36. During the inappropriate and sexually harassing phone calls, Simpson repeatedly requested that Chestang come to his house for examination purposes.

37. Plaintiff was able to record five of approximately 15 conversations.

38. Conversation #1was approximately 10:29. Highlights of that conversation: "*need hand at the house ... let's have fun / show you a good time ... would not allow extra credit [for Plaintiff] because [Plaintiff] must make sacrifices and learn your role ... doesn't involve*

*sex at all – must be amenable to a night of (inaudible) ... [Plaintiff] wants to be stingy with it.*"  Additionally, Simpson asked Chestang to accompany him out of town to attend Steve McNair's football camp.

39. Conversation #2 was approximately 8:43.  Highlights of that conversation: *"you and your friend don't come visit anymore ... come to my party – drinking, smoking and other shit ending in 'ing'" ... what you got to smoke – "different things for different guests ... you're creative, you can come up with things for us to do ..."*Additionally, there was a discussion about a student that needed one credit hour to graduate.  Simpson indicated that he wrote a petition on behalf of the student.  Chestang had asked multiple times for Simpson to give him a grade so he could register for classes, so Chestang asked what did he have to do to get the petition.  Simpson suggested for him to grab his ankles (laughing).

40. Conversation #3was approximately 2:55.  Highlights of that conversation: *"indication that previous call had dropped ... Simpson indicated that Chestang should join him before Plaintiff returns to Chicago because Simpson would be bored by himself ... Simpson indicates that he needs somebody to be 'pinching' him in (inaudible) ... Simpson indicated that he needs somebody to put bbd's underwear over his head."*

41. Conversation #4was approximately 50 seconds.  Highlights of that conversation: *"has Anthony gone home yet"* ... general discussion about graduation.

42. Conversation #5was approximately 1:27.  Highlights of that conversation: *"you should be in Jackson tonight to hang out Saturday / Monday ... trying to come to summer school ... I know everything you need, you need to learn what I need ... Chestang asked "what do you need" and Simpson responded "I can show you better than I can tell you since you playing dumb."*  The aforementioned conversations have been attached hereto as Exhibit B.

43. There were a plethora of other conversations on the phone and in person that could not be recorded.  The pervasive harassment created a hostile and intimidating environment that interfered with Chestang's academic progress resulting in severe emotional distress.

44. Chestang was embarrassed and insecure and decided that he had to transfer to obtain an education despite the fact that he loved Alcorn and playing basketball for Coach Samuel West.

45. After Chestang refused inappropriate sexual advances, Simpson began to mistreat Chestang. Simpson retaliated against Chestang and refused to submit a grade because of Chestang's refusal to succumb to Simpson's sexual advances. Simpson's purposeful premeditated and intentional acts prevented Chestang's initial attempt to transfer to another university.

46. On or about June 7, 2008, Attorney Nix sent a letter to Simpson on behalf of Chestang hoping to resolve the matter amicably. Simpson indicated by letter that he had done nothing wrong. The aforementioned correspondence has been attached hereto as Exhibit C.

47. Shortly thereafter, Chestang began to receive a myriad of threatening phone calls from Simpson suggesting that Chestang not return to Alcorn. The aforementioned phone calls were a purposeful attempt to intimidate Chestang from reporting the sexual battery and harassment.

48. Consequently, Chestang transferred to another University in the fall of 2008.

49. As a parting shot, Simpson gave Chestang a grade of "incomplete" despite Chestang completing the required work for the class.

50. As a result of receiving a grade of incomplete from Simpson, Chestang was forced to leave his new school, and unable to play basketball again.[1]

51. Chestang tried to settle this matter by providing the audio files to Simpson and Alcorn. Unfortunately, neither Simpson nor Alcorn felt that Simpson had violated school policies. The aforementioned correspondence has been attached hereto as Exhibit D.

52. Chestang was eventually able to enroll at Belhaven University inSpring 2009 when Defendant Simpson finally submitted a grade for Chestang, enabling his eventual enrollment.

53. In retaliation to Chestang's pursuit of justice, Defendant Simpson gave Chestang a failing grade instead of the grade he earned.

54. As a result of the failing grade, Chestang was again ineligible to play basketball at Belhaven University despite his skill level.

---

[1] As a result of Simpson giving an "incomplete" for the class, Chestang was kicked off the team. When Simpson finally changed the grade from "incomplete" to an "F" then Chestang was unable to play because he didn't meet GPA requirements.

55. Chestang had a scholarship to play at Alcorn, but unfortunately had to forfeit his scholarship because of the harassment and threats. Chestang eventually transferred to Belhaven, but had to take out student loans at Belhaven because of ineligibility caused by Defendant Simpson's grade.

56. Alcorn State University is a Division I basketball program while Belhaven has an NAIA basketball program.  Chestang lost two years of basketball eligibility because of the actions of Defendants.

57. Chestang had to transfer to another college because of the threats he began to receive after articulating the harassment.

58. Unfortunately, Belhaven did not accept all of the credit hours from Alcorn State University, which required Chestang to take and pay for additional classes.

59. As a result of the lost credit hours, Chestang finally graduated from Belhaven in May 2010 and was never able to play collegiate basketball again.

60. As a result of the actions of Defendants, losing two scholarships and incurring student loans to accomplish matriculation have deleteriously affected Chestang.

61. Despite leaving Alcorn, Chestang is still unable to sleep, experiences depression, loss of appetite and unable to focus on daily routines, including the necessary focus to play basketball.  Chestang sought mental health and psychological treatment to address the psychological impact of Simpson's egregiousness.

62. Chestang has and continues to suffer humiliation, mental anguish and emotional distress. Defendants' conduct as to each and every count below was egregious, intentional and carried out in reckless disregard for Chestang's federally protected civil rights, and thus Chestang is entitled to punitive damages.

## COUNT I

### Sexual Harassment and Discrimination

63. Plaintiff realleges paragraphs 1-62 above and incorporates those allegations herein as if fully set forth.

64. Chestang is a male and Dr. Alvin Simpson, Black Psychology Professor and Advisor, is also male.

65. Chestang was repeatedly subjected to Simpson's sexual advances, which constitutes sexual harassment.

66. While at Alcorn, Chestang was subjected to repeated and pervasive acts of sexual harassment by his professor, Dr. Alvin Simpson.

67. The conduct of Simpson upon his male student of the sexual nature was severe and pervasive so as to alter the educational conditions and environment and created a hostile academic environment.

68. While enrolled in Simpson's class, Chestang had to balance his desire to matriculate with the pervasive sexual requests for acts. Plaintiff's ability to successfully complete Simpson's class would require the appropriate instructional guidance, assistance and coaching. Simpson engaged in quid pro quo sexual harassment in that he often required Chestang to take make up exams at his home while barely dressed. If Chestang had succumbed to Simpson's unwanted sexual advances, Simpson indicated he would do well academically. Simpson asked Chestang to engage in sexual activities both directly and indirectly. Chestang's refusal led to Simpson providing him with a grade of incomplete and continuously refusing to provide a grade. His failure to provide a grade led to Chestang being kicked out of his new school until Simpson decided to provide a grade.

69. Had Chestang accepted his proposals for sexual activity, he would have received preferential assistance, treatment and favorable evaluations, which would have led to the successful completion of Simpson's class. As a result of Chestang's refusal to engage in sexual activity with Defendant Simpson, Simpson failed to provide a grade for Chestang further delaying Chestang's educational process.

70. The aforementioned chain of events has affected Chestang financially through procurement of student loans and mentally by having to transfer to another University to graduate. The aforementioned transfer has proven deleterious as Chestang lost valuable credit hours.

71. Evidence will show that Alcorn had prior notice of sexual harassment by Simpson and was deliberately indifferent by failing to take corrective action to put a cessation to students' pain associated to these pervasive sexual acts.

72. As a direct and proximate cause of the above stated violations, Chestang has suffered great mental anguish, emotional distress, humiliation, loss of appetite, loss of sleep,

depression and an inability to focus on daily activities, inclusive of educational and athletic activities. Chestang has sought mental health treatment and psychological therapy.

## COUNT II
### Violation of Title IX

73. Plaintiff realleges paragraphs 1-72 above and incorporates those allegations herein as if fully set forth.

74. Simpson is an employee of Alcorn State University who discriminated against Chestang in violation of Title IX of the Education Act of 1972, by the above described acts of sexual battery, sexual harassment, intimidation and humiliation.

75. Simpson's sexual harassment and intimidation was severe and pervasive, and undermined and detracted from Chestang's educational experience.

76. The severe sexual harassment denied Chestang from equal access to the advantages of Alcorn's resources, opportunities and relationships.

77. Alcorn receives federal funding under Title IX and enabled misconduct in finding from an internal investigation that a violation of Alcorn's policy had not occurred.

78. Alcorn exhibited deliberate indifference and a conscious and reckless disregard to Chestang's harassment by failing to properly investigate. A finding that a violation of the aforementioned policy had not occurred was tantamount to their acceptance of his behavior and further exacerbates Chestang's pain.

79. Title IX provides: *[N]o person in the United States shall on the basis of sex, be excluded from participation from participation in, be denied the benefits of, or [] subjected to discrimination under any education program or activity accepting federal financial assistance.*"

80. Congress enacted Title IX to protect victims and prevent the use of federal resources to support discriminatory practices.

81. Supreme Court continues to support that nondiscriminatory policies must be implemented at all public and private universities.

82. Defendants were informed of Chestang's allegations of sexual harassment.

83. Defendants had the authority to investigate and remedy the harassment expeditiously.

84. After Defendants were informed of Chestang's allegations, Alcorn had actual knowledge.

85. Defendant opted not to follow its own internal grievance procedure regarding sexual harassment and has perpetuated the delay in resolution causing further pain to Chestang.

86. Defendants failed to investigate Chestang's sexual harassment complaint, failed to properly communicate the outcome, and failed to punish the harasser.

87. Defendant's deliberate indifference caused Chestang to suffer great emotional distress, which caused Chestang to transfer to another school.  Chestang's new school did not accept all of the credits from Alcorn challenging the loss of educational opportunity.

88. As a direct and proximate cause of the above stated violations, Chestang has suffered great mental anguish, emotional distress, humiliation, loss of appetite, loss of sleep, depression and an inability to focus on daily activities, inclusive of educational and athletic activities.  Chestang has sought mental health treatment and psychological therapy.

## COUNT III

**Section 1983 and Fourteenth Amendment Due Process and Equal Protection Clause**

89. Plaintiff realleges paragraphs 1-88 above and incorporates those allegations herein as if fully set forth.

90. Defendants used their position at a federally funded University to sexually harass and abuse a child.

91. Simpson, based on sexual desire, intentionally committed his acts of sexual harassment, and intimidation of Chestang while acting under state law.

92. Simpson's acts of sexual harassment and intimidation of Chestang violates the Fourteenth Amendment's guarantee of substantive due process and Equal Protection.

93. As a direct and proximate cause of the above stated violations, Chestang has suffered great mental anguish, emotional distress, humiliation, loss of appetite, loss of sleep, depression and an inability to focus on daily activities, inclusive of educational and athletic activities.  Chestang has sought mental health treatment and psychological therapy.

—

## COUNT IV

### Retaliation

94. Plaintiff realleges paragraphs 1-93 above and incorporates those allegations herein as if fully set forth.

95. After Chestang notified the University that Simpson was engaging in acts of sexual harassment, Chestang started getting threatening phone calls encouraging his removal from Alcorn.

96. Fearful of repercussions, Chestang was forced to transfer to Belhaven University. After enrolling and attending classes for almost two months, Chestang was kicked out because Simpson, in retaliation, refused to submit a grade for the class that Chestang completed.

97. In January 2009, Chestang finally received a grade and was permitted to eventually register for classes. The aforementioned delay is causally linked to Chestang's opposition to sexual harassment and constitutes retaliation in violation of Title IX of Educational Amendments of 1972.

## COUNT V

### Violation of Title IX for Deliberate Indifference

98. Plaintiff realleges paragraphs 1-90 above and incorporates those allegations herein as if fully set forth.

99. Defendant Alcorn was informed of Plaintiff's allegations of sexual harassment.

100. Defendant Alcorn had the authority to investigate and remedy the harassment of their student body.

101. After Defendant Alcorn was cognizant of the allegations of sexual harassment, Alcorn had actual knowledge of the harassment.

102. Defendant Alcorn opted not to follow their internal grievance procedure regarding sexual harassment.

103. Alcorn failed to investigate Chestang's sexual harassment complaint, failed to force the issuance of a grade, and failed to punish the harasser.

104. Alcorn's deliberate indifference caused the Plaintiff to suffer great emotional distress when Plaintiff was forced to leave Alcorn, attend Belhaven, delay his

matriculation an additional year and incur student loans resulting in loss of educational opportunity.

WHEREFORE, Plaintiff requests all legal and equitable relief that is available pursuant to Title IX including compensatory and punitive damages, plus costs of the action, attorney's fees pursuant to the statute, and other such relief that this Court deems appropriate.

THIS, the 11th day of May, 2012.

Respectfully submitted,

RUDY CHESTANG

BY HIS ATTORNEYS
THE HIGH LAW FIRM, PLLC

BY:_____
TERENCE L. HIGH (MS Bar No. 99843)
THE HIGH LAW FIRM, PLLC
774 Avery Blvd. North
Ridgeland, MS  39157
P.O. Box 12054
Jackson, MS  39236
Telephone: 601.991.2218
Facsimile: 601.608.7833
Email: Terence.High@gmail.com

OF COUNSEL:

Brian T. Nix (IL Bar No. 6278829)
THE LAW OFFICES OF BRIAN NIX
17 N. Loomis, Suite 1A
Chicago, IL 60607
Telephone: 312.567.1900
Facsimile: 312.567.1911
Email: brian@lawofficebtn.com