IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RUDY CHESTANG, III                                                    PLAINTIFF

v.                                                CIVIL ACTION NO. 5:12cv69-DPJ-FKB

ALCORN STATE UNIVERSITY, ALCORN
STATE UNIVERSITY BOARD OF TRUSTEES,
and DR. ALVIN SIMPSON, in his official capacity          DEFENDANTS

ORDER

This Title IX sexual-harassment case is before the Court on Defendants' Motion to

Dismiss or, in the alternative, for Summary Judgment [14].  Because the Court concludes that

most of Plaintiff's claims are time-barred, but there are genuine issues of material fact as to

whether his quid pro quo sexual-harassment claim was timely filed, the motion will be granted in

part but otherwise denied.  The Court also finds that Plaintiff should show cause why his claim

under 42 U.S.C. § 1983 should not be dismissed as the defendants appear to be arms of the State.

I.       Facts and Procedural History

Plaintiff Rudy Chestang, III, was a basketball scholarship student at Defendant Alcorn

State University from Fall 2005 through Spring 2008.  Defendant Dr. Alvin Simpson was

Chestang's professor and advisor.  Chestang alleges that Simpson subjected him to unwanted

sexual advances and harassment throughout Chestang's academic career at Alcorn State.

Following the Spring 2008 semester, Chestang consulted with an attorney, who sent Simpson a

letter accusing Simpson of sexually harassing Chestang and demanding that Simpson "submit a

grade for him for the past semester (so he can maintain his eligibility to play basketball) . . . ."

Mot. to Dismiss [14] Ex. G, June 7, 2008 letter.  In response, Chestang alleges that he "began to

receive a myriad of threatening phone calls from Simpson suggesting that Chestang not return to Alcorn."  Compl. [1] ¶ 47.

As a result of Simpson's alleged harassment, Chestang transferred to another university for the Fall 2008 semester.  Chestang alleges that "[a]s a parting shot, Simpson gave Chestang a grade of 'incomplete'" in Simpson's Spring 2008 class "despite Chestang completing the required work for the class."  Compl. [1] ¶ 49.  Simpson ultimately changed Chestang's grade from an "Incomplete" to an "F" in January 2009.  *Id.* ¶ 97.  As a result of the failing grade, Chestang could not meet the GPA requirement to play basketball at his new school, and his college basketball career ended.

On June 10, 2009, Chestang sued Alcorn State, the Alcorn State University Board of Trustees,[1] and Simpson, individually and his official capacity, in the United States District Court for the Northern District of Illinois ("*Chestang I*").  In that suit, Chestang alleged Title IX claims for sexual harassment and discrimination, § 1983 claims for substantive due process and equal protection violations, and state-law tort claims.  *Chestang I* was transferred to this District on April 20, 2010.

Once in Mississippi, Simpson filed a motion to dismiss the claims against him in his individual capacity for failure to serve process within 120 days as required by Federal Rule of Civil Procedure 4(m).  The Court (Bramlette, J.) denied that motion on May 17, 2011, excusing Chestang's delinquent service on Simpson.  Though the delinquent service was forgiven, that same order dismissed a number of other claims against Simpson.  More precisely, the Court dismissed the individual capacity claims under Title IX, the state law claims, and the individual

_____

[1]Alcorn State says that no such entity exists.

2

and official capacity due-process claims under § 1983, all apparently with prejudice.  The Court

denied dismissal of the § 1983 equal-protection claim, but later dismissed that claim in an order

altering judgment.  Thus, all claims against Simpson were dismissed in *Chestang I*.

    After Simpson was dismissed, attention turned to Alcorn State and the Board of Trustees.

On May 27, 2011, those Defendants filed a motion to dismiss for insufficient service of process,

asserting that Chestang never served the Mississippi Attorney General as required by Mississippi

Rule of Civil Procedure 4(d)(5).  On December 12, 2011, the Court granted Alcorn State and the

Board of Trustees' motion, dismissing Chestang's claims against Alcorn State and the Board of

Trustees without prejudice for insufficient service of process.

    Chestang did not appeal the disposition of *Chestang I*, but instead filed this lawsuit

(*Chestang II*) on May 11, 2012—nearly five months after the dismissal of *Chestang I*.  In his

Complaint here, Chestang again raises Title IX claims for sexual harassment and discrimination

and § 1983 claims for substantive due process and equal protection violations, and adds Title IX

claims for retaliation and deliberate indifference.  This time, Simpson was sued in only his

official capacity.  Defendants answered the Complaint on September 21, 2012, and filed their

Motion to Dismiss, or, in the alternative, for Summary Judgment on December 4, 2012, arguing

primarily that Plaintiff's claims are time-barred.  The Court has personal and subject matter

jurisdiction and is prepared to rule.

II.    Standard

    Defendants have moved for dismissal alternatively under Rule 12 and Rule 56, potentially

implicating two standards.  Ordinarily, a court decides a Rule 12(b)(6) motion to dismiss for

failure to state a claim looking only at the face of the complaint; if "matters outside the pleadings

are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(d); *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2011). In this case, the parties have submitted and relied on matters outside the pleadings, and neither party objects to the Court's consideration of these documents. As such, the Court will consider all the evidence before it and treat Defendants' motion solely as one for summary judgment under Rules 12(d) and 56.

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have

4

submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

III.    Analysis

Defendants assert, and Chestang does not dispute, that all of Chestang's claims are subject to Mississippi's three-year general statute of limitations.  Miss. Code Ann. § 15-1-49; *see* Defs.' Mem. [15] at 7, 8, 10; Pl.'s Mem. [19] at 4, 11, 14.  Assuming Chestang is correct that the claims all accrued on or before January 2009 when Simpson finalized Chestang's failing grade, Chestang had until January 2012 to file his lawsuit, but he waited until May 11, 2012, to file *Chestang II*.  While the accrual date is disputed, even under Chestang's theory his claim is stale absent some legal basis for tolling.  Because the analysis varies for Chestang's different theories of recovery, the Court will consider each category in turn.[2]

A.      Title IX Sexual Harassment and Discrimination Claims

At first blush, it might appear that the Title IX claim against Simpson would be barred by *res judicata* based on Judge Bramlette's dismissal with prejudice "because such claims cannot be asserted against individuals."  *Chestang I*, No. 5:10cv67-DCB-RHW, May 17, 2011 Order [62] at 9.  But Judge Bramlette's ruling on this point dealt only with claims against Simpson in his

---

[2]Federal law determines when Chestang's claims accrued, while state law governs the tolling inquiry.  *See Walker v. Epps*, 550 F.3d 401, 414, 416 (5th Cir. 2008) (explaining that the accrual date in cases arising under federal law that borrow state statutes of limitation is determined by reference to federal law, but that tolling principles are borrowed from state law).  "Federal law holds generally that an action accrues when a plaintiff has a complete and present cause of action, or, expressed differently, when the plaintiff can file suit and obtain relief."  *Walker*, 550 F.3d at 414 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) ( internal quotation marks and additional citations omitted).

individual capacity. *Id.* at 10 (citing *Allegria v. Texas*, 2007 WL 3256586, at \*6 (S.D. Tex. 2007); *Rowinsky v. Bryan Ind. Sch. Dist.*, 80 F.3d 1006, 1012–13 (5th Cir. 1996)).  Here, Simpson is sued solely in his official capacity.  Judge Bramlette's conclusion that Simpson may not be held individually liable under Title IX does not impact the official-capacity claim asserted here. *See Clark v. Amoco Prod. Co.*, 794 F.2d 967, 973 (5th Cir. 1986) ("*Res judicata* does not apply to a situation such as the one here in which a party appears in one action in an individual capacity and in a subsequent action in a representative capacity.") (citation omitted).

Turning then to the claim, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  The statute creates liability and an implied right of action for sexual harassment of a student by a teacher.  *Franklin v. Gwinett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979).

Chestang appears to pursue two distinct theories of liability:  hostile-environment harassment and quid pro quo harassment.[3]  *Compare* Compl. [1] ¶ 67 (describing Simpson's conduct as creating "a hostile academic environment"), *with id.* ¶ 68 (explaining that Simpson gave Chestang a grade of incomplete because Chestang refused Simpson's sexual advances); *see Canutillo Indep. Sch. Dist. v. Leija*, 101 F.3d 393, 404 (5th Cir. 1996) (Dennis, J., dissenting) ("In reviewing claims of sexual discrimination brought under Title IX, whether by students or employees, courts have generally adopted the same legal standards that are applied to such claims

---

[3]Although Chestang denominates his Title IX claims as claims for sexual harassment and discrimination, Chestang does not appear to allege a claim for discrimination apart from the quid pro quo harassment culminating in an "F" in Simpson's class.

under Title VII.") (collecting cases); *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001) ("For a plaintiff to proceed on a claim against an educational institution under Title IX, a plaintiff must . . . show[] that . . . she was subjected to quid pro quo sexual harassment or a sexually hostile environment . . . .").

            1.        Hostile-Environment Claim

Based on the allegations of the Complaint, it appears that the hostile environment allegedly created by Simpson existed from 2005 through Chestang's departure from Alcorn State, which could not have been later than the Fall 2008 semester which he began elsewhere.  The hostile environment claim therefore appears to have accrued no later than August or September 2008, and Chestang had three years—or until no later than September 2011—to bring his hostile environment claim.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).  Yet he waited until May 2012.

Chestang argues for a later accrual date, suggesting that his hostile-environment claim constitutes a continuing tort under Mississippi law.  Specifically, Chestang argues that "Simpson's grade manipulation was part of the harassment and related back to Chestang's rebuke of Simpson's sexual advances" and that "Chestang's injuries resulting from Simpson's harassment were ongoing," pointing to his lost scholarship and opportunity to play college basketball resulting from receiving an F in Simpson's class.  Pl.'s Mem. [19] at 7–8.

As to the "grade manipulation" being part of the harassment, the Court finds that it was a separate discriminatory act and not part of the hostile-academic environment.  *See Morgan*, 536 U.S. at 118; *cf. Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 288–89 (5th Cir. 2008) (citing *Morgan*) (reversing denial of dismissal in Title VII case and rejecting district court's

holding that decision to deny tenure (and therefore terminate employment) was so "intertwined with the hostile work environment claim as to make it a component part of a larger unlawful employment practice").  And the fact that Chestang suffered further injuries after the tortious conduct ceased does not make his hostile environment claim a continuing tort past the date he left campus and was no longer in Simpson's class.  *See Walker v. Epps*, 550 F.3d 407, 417 (5th Cir. 2008) (explaining that the continuing tort doctrine "does not apply when a plaintiff simply alleges that harm reverberates from one wrongful act or omission." (internal quotations and citations omitted)).  The hostile environment ceased to exist—and Chestang's claim accrued—when Chestang left school in late-summer 2008.

Chestang also argues that the statute of limitations was tolled while *Chestang I* was pending, making his hostile-environment claim timely.  Under Mississippi law, the filing of a complaint tolls the statute of limitations as to the claims sued upon for the 120 days permitted for service.  *Watters v. Stripling*, 675 So. 2d 1242, 1244 (Miss. 1996).  And "[a]ssuming proper service of process, filing a complaint tolls the statute of limitations until a suit's dismissal." *Nelson v. Baptist Mem'l Hosp.-N. Miss., Inc.*, 972 So. 2d 667, 671 (Miss. Ct. App. 2007) (citing *Canadian Nat'l/Ill. Cent. R.R. v. Smith*, 926 So. 2d 839, 845 (Miss. 2006)).  But "[i]f, after 120 days, the defendant has not been served, the period of limitation begins to run again."  Jeffrey Jackson and Mary Miller, 5 MS Prac. Encyclopedia MS Law § 44:22 (citing *Watters v. Stripling*, 675 So. 2d 1242 (Miss. 1996)).

Chestang is entitled to 120 days of tolling on account of the filing of *Chestang I.*  But Chestang never properly served the *Chestang II* Defendants—Alcorn State, the Board of Trustees, or Simpson in his official capacity—in *Chestang I.  See Omobude v. Miss. Dep't of*

*Fin. & Admin.*, No. 3:10cv703-TSL-FKB, 2011 WL 346522, at *1 (S.D. Miss. Jan. 31, 2011)
("The rules for service of process recognize that a suit against a government official in his
official capacity is, in effect, a suit against the entity. [Service is therefore effectuated] 'by
delivering a copy of the Summons and complaint to the Attorney General.'") (citing Miss. R.
Civ. P. 4(d)(5).  So the statute of limitations began to run again once the 120 days for service
expired, and was not tolled during the pendency of *Chestang I* as Chestang suggests.  Giving
Chestang the benefit of 120 days of tolling, and assuming an accrual date of September 1, 2008,
Chestang would have had until December 30, 2011 (September 1, 2011 plus 120 days) to file his
hostile-environment claim.  He failed to do so, and the claim is time-barred.

> 2.      Quid Pro Quo Claim

Viewed in the light most favorable to Chestang, his quid pro quo claim may not have
accrued until sometime in January 2009, when Simpson finally changed his grade from an
incomplete to an "F" as a consequence of Chestang's rejection of Simpson's sexual advances.
*See La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481–82 (5th Cir. 2002) (explaining that quid
pro quo harassment in the employment context occurs when an employee suffers a "tangible
employment action" that "resulted from his acceptance or rejection of his supervisor's alleged
sexual harassment"); *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d
Cir. 2011) ("[A] quid pro quo sexual harassment claim under Title IX requires proof of three
elements: (1) the rejection of sexual advances; (2) a tangible school-related (as opposed to
employment) consequence; and (3) a causal connection between the two." (citation omitted)).
He had three years, or until January 2012, to bring the quid pro quo harassment claim.  And, as
with the hostile-environment claim, the quid pro quo claim was tolled for 120 days for service of

process once *Chestang I* was filed.  Assuming an accrual date of January 31, 2009, Chestang would have had until May 30, 2012, to bring his quid pro quo claim.  His May 11, 2012 *Chestang II* Complaint would therefore be timely as to the quid pro quo claim.[4]  Because there is a fact question as to exactly when the quid pro quo harassment claim accrued, summary judgment on this claim will be denied.

    B.     Section 1983 Claims

Chestang alleges that Simpson's sexual harassment of him violated his due process and equal protection rights, and he asserts § 1983 claims as a result.  In their briefs, the parties give cursory attention to complicated *res judicata* arguments that may bear further examination.  But, as an initial matter, the Court notes that Judge Bramlette dismissed the official capacity § 1983 claim against Simpson in *Chestang I* because Alcorn State, Simpson's employer, is an arm of the State of Mississippi, and a state is not a "person" within the meaning of § 1983.  *Chestang I*, No. 5:10cv67-DCB-RHW, May 17, 2011 Order [62] at 11; *see Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007); *Laxey v. La. Bd. of Trs.*, 22 F.3d 621, 623 (5th Cir. 1994).  Neither party raised the issue, but it could be dispositive of the § 1983 claims.  Therefore, Plaintiff is ordered to show cause, if any he has, why the § 1983 claims should not be dismissed on or before April 29, 2013.  Defendants may file a response on or before May 13, 2013, and Plaintiff may file a rebuttal on or before May 20, 2013.

---

[4]So long as Chestang's quid pro quo claim accrued after January 12, 2009, that claim is timely due to the 120 days of tolling.  If, however, evidence reveals that Simpson issued Chestang's failing grade before January 12, 2009, even with 120 days added to the three-year statute of limitations, the quid pro quo claim would be time-barred.

C.      Title IX Retaliation and Deliberate-Indifference Claims

Chestang asserts separate claims for retaliation and deliberate indifference under Title IX. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action."); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 383–84 (explaining that defendants in a Title IX case may be liable if they are deliberately indifferent to discrimination).[5]  Like his quid pro quo harassment claim, these claims accrued no later than January 2009, when the final alleged act of retaliation and quid pro quo harassment—the change of Chestang's incomplete to a failing grade in Simpson's class—took place.  Chestang had three years—or until January 2012—to assert these claims.

Unlike with his other Title IX claims, Chestang did not include a retaliation or separate deliberate-indifference claim in his complaint in *Chestang I*.  Because Chestang first asserted these claims on May 11, 2012, in *Chestang II*, no tolling occurred.  *See* 54 C.J.S. Limitations of Actions § 176 ("In order for the filing of one action to toll the statute of limitations for later filed claims, the causes of action in the original complaint ordinarily must be identical to the later asserted claims; the filing of one action does not toll the statute of limitations for all claims arising out of the same facts."); *cf. Dillard v. Vicksburg Med. Ctr., Inc.*, 695 F. Supp. 880 (S.D. Miss. 1988) (holding that filing of EEOC charge did not toll statute of limitations on § 1981 claim not raised in EEOC charge).  The retaliation and deliberate-indifference claims are time-barred.

---

[5]For purposes of the statute of limitations issue, the Court assumes that Chestang's deliberate-indifference claim is a distinct claim from his Title IX discrimination claim.

11

E.      Chestang's Remaining Arguments

Chestang makes two final arguments that appear to relate to the timeliness of all his

otherwise time-barred claims:  relation back and equitable tolling.

1.      Relation Back under Rule 15

Chestang argues that his *Chestang II* Complaint relates back to the filing of *Chestang I*

under Federal Rule of Civil Procedure 15, which provides:

> An amendment to a pleading relates back to the date of the original pleading
> when:
>
> . . . .
>
> (B) the amendment asserts a claim or defense that arose out of the conduct,
> transaction, or occurrence set out—or attempted to be set out—in the original
> pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a
> claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided
> by Rule 4(m) for serving the summons and complaint, the party to be brought in
> by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on
> the merits; and
>
> (ii) knew or should have known that the action would have been brought against
> it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).  But Rule 15, by its terms, necessarily involves an amendment to a

pleading in the same action in which the original pleading was filed.  Here, *Chestang I* was

dismissed, and *Chestang II* is a new action, with its own "original pleading."  There was no

amendment and can be no relation back under Rule 15.  *See O'Donnell v. Vencor Inc.*, 466 F.3d

1104, 1111 (9th Cir. 2006) ("O'Donnell's second complaint does not 'relate back' to her first

complaint because her second complaint was not an 'amendment' to her first complaint, but rather a separate filing.").

### 2.      Equitable Tolling

Finally, Chestang argues that the statute of limitations on his claims should be equitably tolled "to facilitate justice."  Pl.'s Mem. [19] at 10.  Equitable tolling applies in "rare and exceptional circumstances" to "preserve[] a plaintiff's claims when strict application of the statute of limitations would be inequitable."  *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (citations omitted).  An important consideration in an equitable tolling analysis is whether a plaintiff "has exercised due diligence in pursuing [his] rights."  *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011); *accord Alexander*, 294 F.3d at 629 (explaining that equitable tolling "will not be applied where the applicant failed to diligently pursue" relief).

The Court concludes that Chestang has not established his entitlement to equitable tolling because he was not diligent in pursuing his rights.  As Judge Bramlette noted in his order dismissing *Chestang I*, "within a week of present counsel's appearance in [that] case, Magistrate Judge Roper put [counsel] on notice" that service had not yet been perfected against Alcorn State.  *Chestang I*, No. 5:10cv67-DCB-JMR, slip op. at 4 (S.D. Miss. Dec. 12, 2011).  Yet nearly 17 months later—and 731 days after *Chestang I* was filed—Chestang still had not served Alcorn State.  Chestang would not face a time-bar had he perfected service of process within the time allowed by the rules.  Moreover, he chose not to appeal the disposition in *Chestang I* and waited an additional five months before filing *Chestang II*, despite Judge Bramlette's warning that "it is highly probable that the statutes of limitations on all of Chestang's claims have run."  *Id.*

13

Chestang sat on his rights and fails to demonstrate that equity requires relief from the statute of limitations.

IV.    Conclusion

The Court has considered all of the parties' arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment [14] is granted in part and Plaintiff's hostile-environment harassment, retaliation, and deliberate-indifference claims are dismissed as time-barred.  The motion is denied as to Plaintiff's Title IX quid pro quo harassment claim.  Plaintiff is ordered to file a response to this order on or before April 29, 2013, addressing whether Defendants are proper parties to Plaintiff's § 1983 claims as set forth above.  Defendants may file a response on or before May 13, 2013, and Plaintiff may file a rebuttal on or before May 20, 2013.

**SO ORDERED AND ADJUDGED** this the 15th day of April, 2013.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE